## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS GIOMBETTI and MAYRA GIOMBETTI<br><br>Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, *Acting Secretary of U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP & IMMIGRATION SERVICES; LESLIE TRITTEN, *Minneapolis Field Office Director of USCIS*; and EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>Defendants. | Civil No. 20-873 (JRT/ECW)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS AND DENYING INJUNCTIVE RELIEF** |

Nicholas Ratkowski, **CONTRERAS & METELSKA, P.A.,** 200 University Avenue West, Suite 200, Saint Paul, MN 55103, for plaintiffs.

Erin M. Secord, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis MN 55415, for defendants.

Plaintiff Mayra Giombetti and her husband Thomas Giombetti seek to adjust Mayra Giombetti's immigration status. As part of the process, Giombetti intends to file a provisional unlawful presence waiver. However, in order to be eligible for such a waiver, Giombetti must not be in active removal proceedings. Although Giombetti's first set of immigration paperwork was approved by the US Citizenship and Immigration Services in January 2019, it was not sent to its next destination—the National Visa Center—until April

2020. Defendants sent the approved form to the National Visa Center on the same day they filed a motion in immigration court seeking to recalendar Giombetti's removal proceedings, which had previously been administratively closed. Once these proceedings are recalendared, Giombetti will no longer be eligible to apply for the waiver.

Giombetti seeks injunctive relief, first to cancel or otherwise prevent the Motion to Reopen from being considered by the immigration court, and second, to require Defendants to review and adjudicate her waiver application as if it had been filed prior to the recalendaring of her removal proceedings. Defendants filed a Motion to Dismiss, arguing that the Court has no jurisdiction to consider Giombetti's claims.

Because Giombetti's claims relating to Defendants' filing of a Motion to Recalendar arise out of a decision or action to commence removal proceedings, 8 U.S.C. § 1252 strips the Court of jurisdiction, and the Court will grant in part Defendants' Motion to Dismiss as to those claims. However, because neither mootness nor 8 U.S.C. § 1252 bar Giombetti's claims regarding Defendants' delay in forwarding Giombetti's files to NVC, the Court will deny Defendant's Motion as to those claims. Furthermore, in part because the Court lacks jurisdiction, and in part because Giombetti has not shown imminent irreparable harm, the Court will deny Giombetti's Motion for Temporary Restraining Order without prejudice. Instead, the Court urges Giombetti to file her waiver application as soon as possible, and to notify the Court once she has done so.

## BACKGROUND

**I.     GIOMBETTI'S I-130 FORM**

Plaintiff Mayra Giombetti is a citizen of Mexico who married Plaintiff Thomas Giombetti, a U.S. citizen, in July 2017.  (Am. Compl. ¶¶ 15–16, April 8, 2020, Docket No. 15.)  They currently reside in Minnesota.  (*Id.* ¶ 14.)  In November 2017, as a first step toward adjusting Giombetti's status and obtaining Legal Permanent Resident status, Plaintiffs submitted a form I-130 Petition for Alien Relative.  (*Id.* ¶ 17.)  In the form, Plaintiffs indicated that although Giombetti resides in the US, she intended to apply for an immigrant visa from Mexico because she is ineligible to adjust her immigration status from within the United States.  (*Id.* ¶¶ 19–21, 32, 37–39.)  The Minneapolis Field Office of the US Citizenship and Immigration Services ("USCIS") approved the I-130 Form on January 3, 2019.  (*Id.* ¶ 22.)

The next step for the approved files was the U.S. Department of State National Visa Center ("NVC"), which processes all approved immigrant visa petitions that require consular action and determines which consular post is the appropriate consulate to complete visa processing.  (*Id.* ¶ 24.)  The NVC would then forward the approved petition to that consulate.  (*Id.*)

Giombetti alleges that USCIS should have sent the paperwork to NVC automatically, for free, and within six weeks of approval.  (*Id.* ¶¶ 29–30.)  USCIS did not send the paperwork to NVS within six weeks.  It appears that neither USCIS nor Giombetti

did anything for approximately seven months.  In late August 2019, Giombetti began a months-long series of back and forth communications with USCIS and NVC as to the status of the files.  (*Id.* ¶¶ 31–38.)  Eventually, after confusion about whether USCIS had sent the files and whether NVC had received them, USCIS told Giombetti on April 2, 2020 that it would not forward the file because "Plaintiffs' filled out boxes 11.a – 11.h on the Form I-130 (evidencing that Mrs. Giombetti is currently in the United States)."  (*Id.* ¶ 39.)

On April 3, 2020, after being notified that Giombetti would file her initial Complaint that day, USCIS forwarded the paperwork to NVC.  (Declaration of Shauna Harrison ("Harrison Decl.") ¶ 5, April 22, 2020, Docket No. 25.)  The NVC received Ms. Giombetti's file on April 8, 2020. (*Id*. ¶ 6.)  As of May 4, 2020, Giombetti had not filed the waiver paperwork, and counsel represented at oral argument that Plaintiffs were still in the process of preparing the application.

## II.    GIOMBETTI'S IMMIGRATION STATUS

Giombetti is currently in removal proceedings, which are administratively closed. (Am. Comp. ¶ 41.)  In order to adjust her status to Legal Permanent Resident, she intends to go to Mexico and complete her immigration process there.   However, because Giombetti is unlawfully present in the United States, if she leaves the country for Mexico she will be barred from reentry for 10 years.  (*Id.* ¶ 59.)  In order to prevent the 10-year bar, Giombetti intends to apply for a provisional unlawful presence waiver, which will allow her to bypass the 10-year bar.  (*Id.*)  She was unable to apply for this waiver until

USCIS sent her file to NVC. However, she now faces a time crunch because she will be unable to submit a waiver application once her removal proceedings are recalendared. (*Id.* ¶ 47.) She needs only to file her waiver application, not have it adjudicated, before her removal proceedings are recalendared. (Mem. in Support of Second Mot. for Temp. Restraining Order at 39, April 8, 2020, Docket No. 19.)

Giombetti's initial Complaint and First Motion for Temporary Restraining Order sought to enjoin the government from filing any motion to recalendar Giombetti's removal proceedings. (*See* First Mot. for TRO at 1, April 3, 2020, Docket No. 5.) Before filing his Motion, Giombetti shared it with Defendants, in an apparent misreading of Local Rule 7.1, which requires a meet and confer prior to filing motions other than a temporary restraining order. *See* Local Rules 7.1(a).

That day, Defendants filed a Motion to Recalendar Giombetti's removal proceedings. (Am. Compl. ¶ 72.) It is not clear whether Defendants had been formally served when they filed the Motion.[1] The parties agree that the Immigration Court will grant the Motion to Recalendar once it hears the motion; however, because of the current coronavirus pandemic, immigration courts are not hearing motions in cases with non-detained immigrants. At oral argument, the parties agreed that the Immigration Court

---

[1] Defendants also explain that filing such motions to recalendar are standard procedure whenever the office comes across an administratively closed case, regardless of the circumstances. (Decl. of Dominic Katnick in Support of Defs.' Mot. to Dismiss ¶ 3, April 22, 2020, Docket No. 26.)

would not consider the Motion to Recalendar until late May, and that sometime in June appeared more likely.

## ANALYSIS

### I. MOTION TO DISMISS UNDER RULE 12(b)(1)
#### A. Standard of Review

"Dismissal for lack of subject matter jurisdiction will not be granted lightly. Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction." *Wheeler v. St. Louis Sw. Ry.*, 90 F.3d 327, 329 (8th Cir. 1996) (citation omitted). It is the burden of the party asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

In resolving a motion to dismiss under Rule 12(b)(1), the Court may consider evidence extrinsic to the complaint without converting the motion into one for summary judgment. *See Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990). It may also make "factual determinations about the availability of . . . relief" in considering a jurisdictional challenge under Rule 12(b)(1). *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

#### B. Jurisdictional Bar in 8 U.S.C. § 1252(g)

**1. Applicable Law**

8 U.S.C. § 1252, which deals with judicial review of orders of removal, states in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

In 2017, the Eighth Circuit clarified the statute, noting that "[i]n light of legislation transferring functions of the former Immigration and Naturalization Service to the Department of Homeland Security, 6 U.S.C. §§ 202, 251, 557, the statutory reference to 'Attorney General' now means the Secretary of the Department of Homeland Security." *Silva v. United States*, 866 F.3d 938, 940 n. 2 (8th Cir. 2017) (citing *Elgharib v. Napolitano*, 600 F.3d 597, 606-07 (6th Cir. 2010)).  Thus, as for those functions which were transferred from the former Immigration and Naturalization Service to the Department of Homeland Security, 8 U.S.C. § 1252's jurisdictional bar was also transferred.  Presumably, then, for those functions which have remained with the Attorney General (i.e., those performed by the EOIR), the jurisdictional bar remains applicable.[2]

---

[2] Defendants Chad F. Wolf, Acting Secretary of U.S. Department of Homeland Security; U.S. Department of Homeland Security; U.S. Citizenship & Immigration Services; and Leslie Tritten, Minneapolis Field Office Director of USCIS are all part of the Department of Homeland Security. The Executive Office for Immigration Review (EOIR) is a part of the Department of Justice.

The Eighth Circuit has found that "arising from a decision or action" means that it is "connected directly and immediately." *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (quoting *Humphries v. Various Fed. USINS Emps*., 164 F.3d 936, 943 (5th Cir. 1999). The statute does not distinguish between discretionary and nondiscretionary decisions. *Id.* Nor does the statute contain an exception for government error. *Id.* (finding that where the government erroneously deported an individual in violation of a stay of removal, the court lacked jurisdiction to hear a damages claim under the FTCA because the deportation, though in error, arose from a decision or action to execute a removal order.)

The jurisdictional bar is not without limitation: the Supreme Court has clarified that "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 482 (1999). The Supreme Court, reviewing the history of the statute, explained that it was designed to protect the government's discretionary determinations *not* to deport individuals. *Id.* at 485. The Court specifically notes that there are many other deportation-related decisions or actions that are outside the scope of these three actions and thus not subject to the bar, including, "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* at 471.

Accordingly, courts have found that § 1252 "does not eliminate the ability of a court to review claims that are independent of challenges to removal orders."[3] *Herbert L. R. v. Tritten*, 421 F. Supp. 3d 688, 692 (D. Minn. 2019) (quoting *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012)).

### 2. Application to Amended Complaint

The question thus is whether the acts or decisions Giombetti alleges arise from a decision or action to commence proceedings or adjudicate cases (as there is no removal order against Giombetti to execute.)

Giombetti's Amended Complaint sets forth four causes of action:

1) That Defendants' failure or delay to forward the paperwork to the NVC violates the APA;
2) That Defendants' failure or delay to forward the paperwork to the NVC violates the INA and the Constitution;
3) That Department of Homeland Security acted arbitrarily and capriciously and abused its discretion in filing a Motion to Recalendar Giombetti's removal proceedings; and
4) That Department of Homeland Security violated the Due Process clause by filing a Motion to Recalendar Giombetti's removal proceedings.

Because the APA cannot create jurisdiction if it is barred elsewhere by statute, from a jurisdictional standpoint Giombetti's claims are really two: that USCIS failed to

---

[3] Giombetti couches some of her claims in the language of the APA, presumably as a way to shore up jurisdiction or offer alternative grounds. "However, the APA does not empower courts to set aside agency actions where other statutes preclude judicial review." *Herbert L. R. v. Tritten*, 421 F. Supp. 3d 688, 692 (D. Minn. 2019) (quoting *Singh v. U.S. Citizenship and Immigration Servs.*, 878 F.3d 441, 445 (2d Cir. 2017)).

forward defendants' paperwork to NVC, and that DHS improperly filed a Motion to Recalendar Giombetti's removal proceedings.

As to the first claim, it appears to the Court that a failure to timely transfer paperwork is not within the province of 8 U.S.C. § 1252. Such allegations, on their face, are not "connected directly and immediately" to a decision to commence or adjudicate proceedings. While the status of proceedings is relevant to eligibility for a waiver, an agency's duty to process paperwork is far removed from the prosecutorial discretion protected by § 1252.

However, as to Giombetti's second claim, the analysis is different. Recalendaring Giombetti's removal proceedings is inextricably linked to Defendants' decision to commence and adjudicate proceedings. Giombetti attempts to distinguish the Eighth Circuit's finding that since the establishment of the Department of Homeland Security, 8 U.S.C. § 1252 applies to that Department for those functions that were transferred from the INS. Giombetti's statutory construction and interpretation is not unreasonable in a vacuum, but it is fully foreclosed by the Circuit's holding in *Silva*. 866 F.3d at 940 n. 2. Given the current status of Giombetti's removal hearings, the next and required step in the commencement and adjudication of proceedings is a motion to recalendar them. As such, the decision to file such a motion is squarely within the jurisdictional bar in 8 U.S.C. § 1252, and the Court has no jurisdiction to consider the claims.

Because Giombetti's claims relating to Defendants' Motion to Recalendar arise from the decision or action to commence and adjudicate proceedings, the Court will grant in part Defendants' Motion to Dismiss. However, because Giombetti's claims relating to Defendants' delay in forwarding files to the NVC do not arise from such a decision or action, 8 U.S.C. § 1252 is no bar to jurisdiction.

**C. Mootness**

Defendants argue that because USCIS did eventually forward the files to NVC, Giombetti's claims relating to this issue are moot.

If, "due to the passage of time or a change in circumstance," there is no longer a live issue in a case, that change can "prevent a federal court from granting effective relief" by rendering a case moot. *Arkansas AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993). Mootness is "a jurisdictional bar, and must be considered before reaching the merits of the case." *Id.*

Although Defendants claim that Giombetti's issue was fully resolved by the transmission of the files to NVC, this conclusion only applies to Giombetti's initial request for injunctive relief ordering Defendants to send the paperwork. Whatever harm was caused by the delay remains. And Giombetti asks for certain relief in the Amended Complaint (and in her TRO Motion) relating to this harm, including: that the Court "Retain jurisdiction over this case until the NVC opens an immigrant visa case for Mrs. Giombetti or until Defendant CIS agrees or is ordered to adjudicate Mrs. Giombetti's forthcoming

application for a provisional unlawful presence waiver, on the merits of the application and without regard for the language of 8 C.F.R. § 212.7(e)(4)(iii)."

Because any harm caused by Defendants' delay in sending Giombetti's files to the NVC remains, and because the Court is still able to grant relief, Giombetti's claims as to the delay are not moot, and the Court will deny Defendants' Motion on this ground.

## II.     MOTION TO DISMISS UNDER 12(B)(6)

Defendants also bring a Motion to Dismiss for failure to state a claim under 12(b)(6).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g., Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).  To avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Defendants essentially argue that Giombetti is wrong about who was at fault in the delay of transmission to NVC, and that Giombetti should have filed additional paperwork to transfer her files to NVC.  While Defendants are free to contest the facts, and they may well succeed at summary judgment, the Court must accept allegations as true at the pleading stage.  Here, there is no real question that Giombetti has plausibly alleged a claim, even if Defendants dispute the truth of the allegations, and the Court will deny Defendant's 12(b)(6) Motion.

### III.     MOTION FOR TEMPORARY RESTRAINING ORDER

Because some of Giombetti's claims survive the Motion to Dismiss, the Court next turns to Giombetti's Motion for a Temporary Restraining Order.

Whether a preliminary injunction should issue turns upon: (1) the probability of the movant succeeding on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury the injunction will inflict on the non-movant; and (4) the public interest.  *Dataphase Sys. Inc. v. CL Sys., Inc*., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).  For a preliminary injunction, the "question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id*.  "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."

*Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quoting 11A Wright & Miller, Federal Practice and Procedure § 2948 (2d ed. 1995)).

Giombetti asks for four different injunction variants, summarized below:

1) Postpone/withdraw the Motion to Recalendar proceedings, prohibit any new motions to recalendar proceedings, prevent any motion to recalendar for 14 months.
2) Prohibit EOIR from adjudicating the Motion to Recalendar until decision on PI or merits of Am. Complaint.
3) If EOIR has already granted the Motion to Recalendar, then set aside or postpone the order to recalendar, enjoin EOIR from considering any new motions to recalendar, and enjoin DHS from filing any new motions to recalendar.
4) Compel USCIS to accept unlawful presence waiver as if the waiver was filed and received on February 28, 2019.

Because the first three requests for injunctive relief arise from a decision or action to commence removal proceedings, the Court has no jurisdiction to consider these requests.

Because the fourth request is not outside the Court's jurisdiction, the Court will consider the *Dataphase* factors. As a threshold consideration, the Court looks to the question of irreparable harm. "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). Giombetti must establish that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC,* 109 F.3d 418, 425 (8th Cir. 1996).

Fundamentally, Giombetti requests that the Court order USCIS to accept her unlawful presence waiver as if she had filed it before her removal proceedings were recalendared. The potential harm to Giombetti is clear – she fears that she may not be able to apply for the waiver.

However, Giombetti has not shown any certainty or imminence to this threat. She has been eligible to apply for the waiver since early April, and as far as the Court understands, Defendants have not attempted to interfere with that process. Giombetti agrees that she has until at least late May, and perhaps longer, to file her application, given that the immigration court is not currently considering motions in non-detained cases such as hers. At this stage, Giombetti has not demonstrated that irreparable harm will result if injunctive relief is not granted; to the contrary, her anticipation of future harm is speculative.

Because Giombetti has not demonstrated irreparable harm, the Court need not reach the remaining *Dataphase* factors, and will deny Giombetti's Motion for Temporary Restraining Order, without prejudice. Instead, the Court urges Giombetti to file her waiver application as soon as possible, and to notify the Court as soon as she has done so.

## CONCLUSION

Because Giombetti's claims relating to Defendants' filing of a Motion to Recalendar are barred by 8 U.S.C. § 1252, the Court will grant in part Defendants' Motion to Dismiss

as to those claims. However, because neither mootness nor 8 U.S.C. § 1252 bar Giombetti's claims regarding Defendants' delay in forwarding Giombetti's files to NVC, the Court will deny Defendant's Motion as to those claims.

Furthermore, in part because the Court lacks jurisdiction, and in part because Giombetti has not shown imminent irreparable harm, the Court will deny Giombetti's Motion for Temporary Restraining Order without prejudice.

Finally, the Court repeats its admonition to Giombetti to file her waiver application as soon as possible, and to notify the Court once she has done so.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 23] is **GRANTED in part and DENIED in part**. Giombetti's claims relating to the Motion to Recalendar are **DISMISSED without prejudice**. Because all claims against Defendant Executive Office for Immigration Review are dismissed, Defendant Executive Office for Immigration Review is also **DISMISSED**.

2. Plaintiffs' Second Motion for Temporary Restraining Order [Docket No. 18] is **DENIED without prejudice.**

3. Plaintiffs' First Motion to Exceed Word Limits [Docket No. 21] is **DENIED as Moot.**

DATED: March 11, 2019
in Minneapolis, Minnesota at 2:35 p.m.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court